UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---------------------------------------------------------X

| | | |
|---|---|---|
| PATRICIA L. ARNOLD, | ) | CASE NO. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHICAGO STATE UNIVERSITY, | ) | PLAINTIFF DEMANDS |
| CHICAGO STATE UNIVERSITY | ) | A TRIAL BY JURY |
| BOARD OF TRUSTEES, REV. LEON | ) | |
| FINNEY, Ph.D (in his individual and | ) | |
| official capacities), BETSY HILL | ) | |
| (in her individual and official | ) | |
| capacities), PEGGY MONTES (in her | ) | |
| individual and official capacities), REV. | ) | |
| RICHARD TOLLIVER, ( in his | ) | |
| individual and official capacities), | ) | |
| SANDRA WESTBROOK, Ph.D (in her | ) | |
| individual and official capacities), | ) | |
| ERMA BROOK WILLIAMS, Ed.D | ) | |
| (in her individual and official capacities | ) | ) |
| | ) | |
| Defendants. | ) | |

---------------------------------------------------------X

**COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF**

Plaintiff, PATRICIA L. ARNOLD (hereinafter "ARNOLD"), by her counsel, BARBOSA LAW GROUP, P.C., complaining of the defendants, CHICAGO STATE UNIVERSITY (hereinafter "CSU"), members of the CHICAGO STATE BOARD OF TRUSTEES (hereinafter the "BOT"), Rev. LEON FINNEY, Jr., (hereinafter "Finney"), in his individual and official capacities as the Chairman of the BOT, SANDRA WESTBROOK (hereinafter "Westbrook") in her individual and official capacities as the

Provost and Sr. Vice President for academic affairs and, previously, senior administrative officer of CSU, BETSY HILL (hereinafter "Hill") in her individual and official capacities as a member of the BOT, PEGGY MONTES (hereinafter "Montes") in her individual and official capacities as a member of the BOT, REV. RICHARD TOLLIVER, Ph.D (hereinafter "Tolliver") in his individual and official capacities as a member of the BOT, and ERMA BROOKS WILLIAMS, Ed.D (hereinafter "Williams") in her individual and official capacities as the liason between the BOT and administration when the acts complained of occurred alleges as follows:

## NATURE OF THE CASE

1. This civil rights action is brought under 42 U.S.C 1983 ("Section 1983); and Chicago State University Law (110 ILCS 660/5-45(2)).

## JURISDICTION AND VENUE

2. Jurisdiction of this court conferred and invoked pursuant to 28 U.S.C §§ 1331, 1343 (3) and (4); 42 U.S.C § 1983; and the Fourteenth Amendment to the Constitution of the United States.

3. Mandatory injunctive relief, declaratory relief, compensatory and punitive damages, attorneys fees and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C. §2000e-5(g) and (k), 42 U.S.C. §1981A, 42 U.S.C. §1988, and 28 U.S.C. §2201.

4. As many of the unlawful practices complained of herein occurred within this judicial district, venue is proper in this District pursuant to 42 U.S.C. §2000e-5(f) (3) and 29 U.S.C. §1391(b).

## PARTIES

5.     Arnold was and is a resident of Chicago, Cook County, Illinois at all relevant times.

6.     At all times herein mentioned, CSU was and still is a state educational institution existing under the laws of the State of Illinois.

7.     At all times hereinafter mentioned, CSU was and still is located at 9501 South King Drive, Chicago, Illinois 60628.

8.     At all times hereinafter mentioned, the BOT was and still is a university governing body organized and existing under the laws of the State of Illinois.

9.     At all times hereinafter mentioned, the BOT was and still is a university governing body located at 9501 South King Drive, Chicago, Illinois 60628.

10.    At all times hereinafter mentioned, CSU was Arnold's employer; Westbrook was an administrator for CSU; Finney was the Chairman of the BOT;. Hill, Tolliver, and Montes were members of the BOT, Williams was the liason between the BOT and the administration of CSU.

11.    The employees of CSU referred to in this complaint authorized Arnold's termination and at all relevant times acted on behalf of their employer (CSU) and in their individual and official capacities.

## FACTUAL ALLEGATIONS COMMON TO
## ALL CAUSES OF ACTION

12.    Arnold was recruited by the CSU in August 2008 as the Director of University Relations, to manage marketing and public relations matters. After an administrative reorganization in September 2008, Arnold's position changed to Executive Director of University Relations, and was given the additional responsibility of managing the internal communications and event management staff.

13. In January 2009, due to vacancy of the associate director of marketing position in her department, she was promoted to Executive Director of University Relations and Marketing.

14. Arnold has performed all her duties at CSU and met the reasonable expectation of her employer prior to her unlawful termination.

15. On or about March 11, 2009. Finney and the BOT requested information from the personnel files of several key administrators regarding the commitments that had been made when they were hired, and whether anything in their contracts with CSU would preclude their termination. Stephen Seth Hosick (hereinafter "Hosick"), then Director of Human Resources, declined this request.

16. In or about April 2009, Wayne Watson. Ph.D (hereinafter "Watson") signed a contract to be the president of CSU but was required to begin duties as the president of CSU on October 1, 2009 because of state pension requirement. Watson started attending administrative meetings and began to influence administrative hearings, recruitment and termination decisions. Finney and Watson are close friends and Finney extensively lobbied for Watson to be hired as the President of CSU.

17. On or about May 4, 2009, Williams called a meeting in which Finney, Westbrook, Hosick and his supervisor were in attendance. At the meeting, Finney questioned and reprimanded Hosick and Hosick's supervisor for not honoring his requested of March 11, 2009 regarding accessing information in CSU employees' personnel file including Arnold's file. Hosick again declined the request.

18. In or about May 2009, Arnold unveiled marketing and advertising plan for CSU aimed at identifying student recruitment issues and how to recruit and retain more

students for CSU. Finney liked the marketing plan but Watson did not like the plan. Watson was supposed to officially start work in October 2009

19. In early June 2009, Hosick continued to oppose unlawful intervention by the BOT, Finney, Williams in the hiring of new employees, termination of current employees, as Well as the awarding of no-bid contracts to vendors.

20. Without authority to do so, Finney told Williams to call herself the "Associate President". Frank Pogue ("Pogue"), the then President of CSU, had given Williams a written directive not to use the title of "Associate President".

21. In or about June 18, 2009, Williams sent an e-mail to Hosick, informing Hosick that Finney was "furious" [emphasis added] that Hosick had circumvented the BOT's directive regarding hiring and firing and accused Hosick of "Stacking the deck against Wayne Watson, Ph.D (hereinafter "Watson"), the soon-to-be hired President of the CSU, by hiring employees who had not been approved by the BOT and Finney.

22. On or about June 18, 2009, Hosick wrote an e-mail to the BOT, BOT's attorney (Mark Dunn, Esq.), Frank Progue (hereinafter "Pogue"), Westbrook, Dean Justmann, Ph.D.(hereinafter "Justmann"), Hosick's supervisor, recounting several attempts and Hosick's opposition to BOT's interference and control of Personnel's day-to-day decisions.

23. Hosick had stated, and Pogue agreed with Hosick that the BOT, through its Chairman, Finney, had requested information from personnel files of several key Administrators, including Arnold, regarding the commitments that had been made when they were hired, and whether anything in their contracts with the CSU would preclude their termination.

24. On or about July 1, 2009, Westbrook became the Senior Administrative Officer of CSU with acting duty of the President after Pogue stepped down as the interim CSU President. As of July 1, 2009, Watson was already on CSU campus minimum of three days a week in what he told a local newspaper reporter, "I am volunteering my time at CSU pending my official assumption of duties in October as the President of CSU". Finney was unofficially taking orders from Watson and Westbrook, as newly appointed senior administrator, was taking instructions from Finney and BOT concerning administrative matters.

25. On or about July 1, 2009, Westbrook, in violation of the Illinois Procurement Act, signed a no-bid $15,156.01 contract for MK Communications, Chicago. This no-bid contract award was initiated by Finney. The contract provided six weeks of public relations services for the BOT from May13, 2009 to June 30, 2009.

26. On or about July 2, 2009, Westbrook terminated the employment of Arnold as Executive Director of CSU Public Relations and Marketing without cause. The termination was effective September 30, 2009. Hosick saw Westbrook give the letter of termination to Arnold Westbrook told Arnold that the decision to terminate her did not originate from Westbrook but she was taking orders "from above" [emphasis added].

27. No one "above" Westbrook, namely, the BOT had the legal authority to terminate CSU staff without cause. Article 1, Section 2 General Concepts of the BOT's Bylaws specifically states, "*[T]he Board's focus is one of oversight and policy determination. The Board delegates the conduct of administration and management of the President.*"

28. When Arnold received an e-mail confirming that her termination carried out by

Westbrook was unlawfully ordered by the BOT and Finney, Arnold protested her unlawful termination to the BOT's legal counsel as well as the CSU's legal counsel. Arnold has not received any response to her unlawful termination from the above-mentioned legal counsels or CSU.

29. On or about July 13, 2009, Westbrook gave notice of termination of employment to Hosick without cause to commence on October 15, 2009.

30. On or about July 26, 2009, Westbrook sent an e-mail to Finney to report that Westbrook had terminated specific persons including Arnold according to Finney's directions. Finney confirmed receipt of Westbrook's e-mail.

31. On or about July 29, 2009, Finney sent an e-mail to Westbrook which shows that the CSU BOT was using Westbrook as shield to intentionally circumvent CSU law and usurp the legal authority of the administration to operate the university, including making all the hiring and termination decisions below the position of CSU President. In addition to employment matters, BOT and Finney were making decisions relating to no-bid contracts

32. On or about July 30, 2009, Westbrook awarded no-bid contract in the amount of $40,000 to two vendors selected by journalist Hermene Hartman, who acknowledged in a local newspaper article, that she is a friend of Watson.

### **COUNT I: VIOLATION OF 42. U.S.C 1983 (SECTION 1983)**
### **(Applies to all defendants)**
### **14th Amendment**

33. Arnold repeats, re-alleges and incorporates by reference, all aforementioned paragraphs, specifically the statements in the FACTS section of this amended complaint,

with the same force and effect as if therein set forth. Having said this, the Facts section is to be read as a paragraph in Arnold's Count I.

34. Arnold is a citizen of the United States as defined by Section 1983 of the Civil Rights Act

35. The discriminatory actions for which Count I relates were carried out by the defendants in their individual and official capacities.

36. As a result of a direct and proximate result of the defendant's conduct, Arnold was deprived of rights, privileges and immunities secured by the Fourteenth Amendment of the United States Constitution.

37. The defendants are state actors and were made within the scope of their respective duties.

38. The freedom to engage in a common occupation of life is guarantees pursuant to the Fourteenth Amendment of the United States Constitution.

39. Arnold was deprived of both liberty and property interest as a result of the defendant's actions.

40. The defendants acted in bad faith and with willful, callous and wanton disregard for Arnold's federally protected rights.

41. Arnold had a protected property interest in pursuing an occupation and has a constitutional right to take advantage of employment opportunities as they arise in that occupation.

42. Arnold has a property interest in making sure that the defendants abide by applicable State and federal laws in employment termination matters.

43. Arnold was harmed and continues to be harmed by the defendants' conduct.

Such harm includes, defamation, great and irreparable present and future loss and injury including, but not limited to pain and suffering, humiliation, embarrassment and mental stress.

44. The conduct of the defendants named in their individual capacities, is/was the proximate cause and a substantial factor in causing Arnold's harm

### COUNT II: VIOLATION, CHICAGO STATE UNIVERSITY LAW (110 ILCS 660/5-45(2)) (Applies to all defendants)

45. Arnold's repeats, re-alleges and incorporates by reference, all aforementioned paragraphs, specifically the statements in the FACTS sections of this complaint, with the same force and effect as if therein set forth. Having said this, the FACTS section is to be read as a paragraph in Arnold's Count II.

46. The wrongful and unlawful termination actions for which Count II relates were carried out by the defendants.

47. The BOT has the authority to remove, "[f]or good cause," the president, all necessary deans, professors, associate professors, assistant professors, instructors, other educational and administrative assistants, and all other necessary employees. At a minimum, the position of Executive Director of CSU Relations and Marketing, Arnold held prior to her termination was a necessary position. Arnold was terminated without cause by the defendants.

48. The actions of the defendants were undertaken intentionally and purposefully with the purpose of denying Arnold procedural and substantive rights under the Chicago State University Law (hereinafter "CSUL").

49. Arnold was harmed and continues to be harmed by the conduct of the

defendants. Such harm includes, defamation, great and irreparable present and future loss and injury including, but not limited to pain and suffering, humiliation, embarrassment and mental stress.

50.     The conduct of the defendants above is/was the proximate cause and a substantial factor in causing Arnold's harm.

## PRAYER FOR RELIEF

WHEREFORE, Arnold respectfully requests that this Court enter a judgment:

(a) declaring that the acts and practices complained of herein are in violation of 42 U.S.C 1983 Due Process Clause of the 14th Amendment and, Chicago State University Law;

(b) enjoining and permanently restraining these violations;

(c) directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and to not continue to affect Arnold's employment opportunities;

(d) directing defendants to place Arnold in the position she would be in but for defendants' discriminatory treatment of her, and to make her whole for all earnings she would have received but for defendants' wrongful and unlawful termination, including, but not limited to, wages, bonuses, pension, interest and other lost benefits;

(e) awarding Arnold compensatory damages for his emotional distress and humiliation;

(f) awarding Arnold punitive damages;

(g) awarding Arnold pre-judgment and post-judgment interest, as well as reasonable attorney's fees and costs of this action;

(h) awarding Arnold damages relating to adverse tax consequences; and

(i) awarding such other and further relief as the Court deems necessary and proper.

**DEMAND FOR A TRIAL BY JURY**

Pursuant to 42 U.S.C. §1981A and Rule 38(b) of the Federal Rules of Civil Procedure, Arnold demands a trial by jury in this action.

Dated: Chicago, Illinois
August 15 , 2010

                                              Yours, etc.

                                              /s/ Raymond Barbosa
                                            Raymond Barbosa (3126801)
                                            George U. Oparanozie (6300477)
                                            Barbosa Law Group, P.C.
                                            Attorney for Plaintiff
                                            PATRICIA L. ARNOLD
                                            100 West Monroe Street
                                            Chicago, Illinois 60603
                                            (312) 223-9885